On the part of the plaintiff it was proved below that Howell Jones had, in the county of Hertford, personal property to the amount of $10,000 or $20,000, from 26 November, 1818, until fourth Monday of February, 1819. *Page 181 
The defendants then proved that Carter, on 15 January, 1819, levied thefi. fa. of the plaintiffs, together with four others of the same teste, on a house and lots and storehouse and stables and a warehouse, which were in the occupation of Howell Jones in the town of Murfreesboro, and also on several slaves in the possession of Jones. All the writs amounted to nearly $5,000, and the plaintiffs' writ was returned on the fourth Monday of February, 1819, indorsed "Forborne by the orders of plaintiffs"; avenditioni exponas then issued from February, 1819, returnable the ensuing May, which was returned indorsed "No sale for want of bidders." The defendant Carter then retired from office.
A venditioni exponas returnable November, 1819, then issued, on which the successor of Carter made the sum of $1,287.75, which was paid to the plaintiffs; and on another venditioni exponas, issuing from November, 1819, to February, 1820, the further sum of $495.22 was made and paid to the plaintiffs. All the property levied on 15 January, 1819, was sold under the last venditioni exponas; (330) and it appeared that none of the writs of fi. fa. which were levied on 15 January, 1819, were satisfied; the balance due on the fi. fa. of plaintiffs, together with interest, was claimed as damages. The defendant then introduced witnesses who swore that the property levied on on 15 January, 1819, was more than sufficient to satisfy the executions if sold at its fair value, but it was uncertain what it would command at a sheriff's sale for specie. One witness testified that William Amis had deposited with an agent bank notes to buy the houses and lots, and that he declined bidding because the property was sold for specie. The amount of these bank notes the witness did not know, but he, the witness, was to buy of Mr. Amis (if he became the purchaser) at the price of $4,500 on a credit. And this witness further swore that property in Murfreesboro declined greatly in value between January and November, 1819.
The plaintiff relied on the sum made by the sale to show that the property levied on was not sufficient in value to pay the executions, and introduced a witness who swore that the levy on 15 January, 1819, was not sufficient; and further, that at that time Howell Jones had, besides the property levied on, goods in a store at Murfreesboro worth between $10,000 and $20,000; that these goods were afterwards levied on by executions issuing from February, May, and August Terms, 1819, and the executions were satisfied. When the property levied on by Carter on 15 January, 1819, was offered for sale by Carter's successor on a venditioni exponas, returnable to August, 1819, the agent of the plaintiff directed the sheriff to require specie, and there was no sale for want of bidders. When the property was sold, it was for bank notes at a discount. *Page 182 
On these facts, his Honor charged the jury that it was the (331) duty of the sheriff to levy on personal property before real, and he left it to them to ascertain from the evidence, whether, if the sheriff had levied on the whole of the goods in the store, the plaintiff's debt, with interest, would have been satisfied or not; and further to ascertain whether the levy made on 15 January, 1819, was sufficient to satisfy the executions levied on it; that it was the right of the plaintiffs to demand specie, nor could the sheriff complain of it, as every plaintiff had a right to demand it in payment of his execution, and in this case the sheriff must have known the plaintiffs were northern merchants and not bound to receive bank notes even if he had sold for them. The jury returned a verdict for the plaintiff for the penalty of the bond, to be satisfied by the payment of $396.25, with interest and costs; and the case was here argued on a rule to show cause why a new trial should not be granted.
Every plaintiff is undoubtedly entitled to demand specie, and is not bound to receive bank bills in payment of his judgment. But the greatest injustice would be done if in actions against sheriffs for an insufficient levy the court were not to take notice that the currency of the country is in bank bills; and that where it is not stipulated to the contrary, all persons calculate upon paying and receiving such bills. If, therefore, a sheriff makes a levy upon property which would be adequate were it sold for bank notes, but inadequate were it sold for specie, he cannot in reason be chargeable upon his bond unless previous notice be given him that specie alone will be receivable. The jury should have been instructed to inquire whether the levy were sufficient if the property had been sold for bank notes; and if it was, it would, in my opinion, have discharged the sheriff without previous notice distinctly given that specie alone would be received. Nor is it right that the sheriff should be chargeable with any depreciation occurring to the property during the time that the execution was forborne by the plaintiff; of this fact of forbearance the sheriff's return is prima facie evidence, and it should have been taken into consideration by the jury. I think there ought to be a new trial.